THIRD DIVISION
November 25, 2009

No. 1-07-3085

| | | |
|---|---|---|
| CHRISTOPHER RIES and | ) | Appeal from the |
| MICHAEL MARTINEZ, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF CHICAGO, a Municipal | ) | |
| Corporation, | ) | Honorable |
| | ) | Susan F. Zwick, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE QUINN delivered the opinion of the court:

Defendant, the City of Chicago (City), appeals from a jury verdict awarding plaintiffs, Christopher Ries and Michael Martinez, damages in the amount of $4,052,572 and $159,069 respectively, for injuries they sustained when a police car, driven by Demario Lowe, struck the car in which the plaintiffs were driving. Immediately before the accident, Lowe had stolen the police car after being detained in the vehicle alone and unrestrained while the engine was running. In addition to the damages award, the jury answered a special interrogatory finding that the City "engaged in a course of action which showed an utter indifference to or conscious disregard for the safety of others." The City filed a posttrial motion seeking a judgment notwithstanding the verdict (*n.o.v.*), or in the alternative, a new trial on all issues. The trial court denied that motion and the City now appeals. For the reasons set forth below, we find that the trial court erred in denying the City's motion for a judgment *n.o.v.*

## I. BACKGROUND

On February 22, 2002, at approximately 2:15 p.m., Chicago police officer Sergio Oliva was in a grocery store parking lot at the intersection of Kedzie and Pratt Avenues in Chicago investigating a multicar accident. When Oliva arrived at the scene, he parked his squad car and exited the vehicle, leaving the engine running, the key in the ignition and the Mars lights activated. Witnesses informed Oliva that Lowe had caused an accident and was attempting to flee the scene. Oliva put Lowe in the back of his squad car, without first handcuffing him, and returned to talk to witnesses. Oliva's squad car did not have a protective barrier to keep detainees in the backseat, and Lowe jumped into the driver's seat of the car and fled the scene.

Sergeant Edward Veth, Oliva's supervisor, witnessed Lowe fleeing the parking lot in Oliva's squad car and began pursuit. Officer Charles Elmer heard a radio transmission stating that Oliva's squad car had been stolen, and upon seeing the vehicle pass him, also began pursuit. While fleeing the pursuing officers, Lowe hit multiple parked vehicles and then, a little over a mile from where the pursuit began, drove through a red light at the intersection of Pratt and Western Avenues at a high rate of speed and struck the plaintiffs' vehicle as they were stopped, waiting to make a left turn. Both plaintiffs suffered multiple injuries. Their damages are not at issue in this case.

On January 20, 2003, plaintiffs filed a complaint in the circuit court of Cook County against the City of Chicago and Oliva alleging that the City, through Oliva, engaged in willful and wanton conduct by failing to turn off the engine and remove the keys from the ignition of the squad car, properly restrain or handcuff Lowe, place Lowe in a squad car that had a protective

1-07-3085

divider and lock or secure the vehicle's rear door.

The City and Oliva filed separate motions to dismiss pursuant to sections 2-615 and 2-619.1 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2006) and 735 ILCS 5/2-619.1 (West 2006)). The City argued, in part, that it was immune from liability under section 4-102 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/4-102 (West 2006)), which immunizes municipalities and employees from liability for failure to provide adequate police protection or service or failure to prevent a crime, and section 4-107 of the Tort Immunity Act, which immunizes municipalities and employees from liability for injuries caused by the failure to make an arrest or by releasing a person in custody (745 ILCS 10/4-107 (West 2006)). Oliva also asserted immunity under those provisions as well as under section 4-106(b) of the Tort Immunity Act, which immunizes municipalities and employees from liability for injuries inflicted by an escaped or escaping prisoner. 745 ILCS 10/4-106(b) (West 2006). The circuit court denied both motions, holding that in Doe v. Calumet City, 161 Ill. 2d 374 (1994), our supreme court held that pursuant to section 2-202 of the Tort Immunity Act (745 ILCS 10/2-202 (West 2006)), willful and wanton conduct in the execution and enforcement of the law is an established exception to the immunities granted by the Act. Doe, 161 Ill. 2d at 389-90.

On June 9, 2005, the City and Oliva filed a third-party complaint against Lowe and a counterclaim against Ries seeking contribution on the grounds that Ries was comparatively negligent for entering an intersection when it was unsafe to do so; failing to maintain an adequate lookout; failing to yield to an approaching police vehicle; failing to use his horn; failing to take

-3-

action to avoid a collision; operating a vehicle under the influence of cannabis and cocaine; and operating a vehicle while cannabinoids and cocaine were present in his blood.

On December 1, 2005, plaintiffs filed a first amended complaint adding allegations regarding the police pursuit of Lowe that preceded the accident. In particular, the complaint alleged that the City, through its employees and agents, engaged in conduct exhibiting an utter indifference to or conscious reckless disregard for the safety of others by failing to terminate a motor vehicle pursuit when the apprehension of the fleeing motorist outweighed the inherent danger created by the pursuit to the general public, the speed of the pursuit was excessive, the volume of pedestrian and vehicular traffic endangered the traveling public, the pursued vehicle was involved in a property damage accident, and the identity of the fleeing motorist would be easily ascertained; and otherwise consciously and recklessly disregarded Chicago Police Department (CPD) rules and procedures.

In their answer to the first amended complaint, the defendants raised an affirmative defense of Ries's comparative negligence on the same grounds as their June 2005 counterclaim for contribution. Defendants also raised affirmative defenses under sections 4-102, 4-106, 4-107, and 8-101 of the Tort Immunity Act and the common law doctrine of public officials' immunity.

Plaintiffs filed a motion for partial summary judgment on defendants' affirmative defense of comparative negligence, which the trial court granted on July 13, 2006, finding no nexus between Ries's drug use and the accident. The trial court also dismissed defendants' remaining affirmative defenses without prejudice, finding as it previously stated, that pursuant to section 2-202 of the Tort Immunity Act (745 ILCS 10/2-202 (West 2006)), willful and wanton conduct is

an established exception to immunity protection provided by the Act. Defendants' subsequent motion to reconsider the summary judgment ruling was denied.

Before the trial started, the court denied as untimely plaintiffs' motion to dismiss the defendant's counterclaim against Ries for contribution. However, based on its earlier grant of summary judgment on the affirmative defense of comparative negligence, the court granted plaintiffs' motion *in limine* to exclude testimony or inference of comparative fault, to bar the parties from mentioning Ries's alleged impairment or alcohol or drug consumption, to bar mention of whether Ries observed or heard any lights, sirens, or collisions before or at the time of the incident, and to bar testimony from Dr. Brown, defendants' expert witness. The court also denied defendants' motion *in limine* to bar testimony or argument that any officer violated any CPD general orders.

At trial, plaintiffs presented the testimony of several Chicago police officers, including the three directly involved in the incident, as well as officers who subsequently investigated it. First, Oliva testified that on February 22, 2002, he was on detail at a People's Gas facility when he left to put gas in his supervisor's squad car. He was taking a shortcut through a grocery store parking lot when he was flagged down by a group of people surrounding a young African American man, who was later identified as Demario Lowe. Oliva testified that when he stopped and got out of his car to find out what was going on, he left the car running, with the key in the ignition and the Mars lights activated. He was told that Lowe had caused an accident and was trying to run away. Oliva testified that Lowe was screaming "they are trying to kill me." Oliva grabbed Lowe and put him in the back of the squad car and turned and walked back to talk to the

people who had flagged him down. Moments later, he saw Lowe driving away in the squad car. He testified that he forgot that the car did not have a partition between the front and back seats. Because his back was to the vehicle, he did not see how Lowe got into the front seat, but testified that he thought Lowe jumped over the backseat.

In response to questions from plaintiffs' counsel, Oliva testified that he was familiar with CPD General Order 91-11, entitled "Restraining Arrestees," which states, in part, that "[a] person taken into Department custody will be restrained and transported in such a manner as to prevent escape, and to provide for the safety of the person in custody and the officers involved." The order also requires officers to "carry authorized handcuffs" and when taking persons into custody to "conduct[ ] a thorough search" and "ensur[e] that the persons are appropriately restrained to prevent escape or injury." Oliva testified that he did not search or handcuff Lowe or obtain identification from him because he did not have time to do so.

Sergeant Veth, Oliva's supervisor, testified that he too was on detail at People's Gas and responded to the grocery store parking lot after hearing Oliva on his car radio calling dispatch for assistance. Before entering the parking lot, Sergeant Veth saw someone driving off in Oliva's squad car approximately 50 or 60 feet away with the Mars lights on and traveling at approximately 60 to 80 miles per hour. Sergeant Veth informed dispatch that he was pursuing the vehicle and activated his Mars light and sirens. Sergeant Veth testified that he was the primary pursuit vehicle and saw no other vehicles in pursuit. He also testified that he was driving at approximately 30 to 35 miles per hour and that he terminated the pursuit after less than 100 feet when he realized that, given Lowe's speed and the fact that Lowe was disobeying traffic

signals, he could not catch him. Sergeant Veth saw Lowe crash into the plaintiffs' vehicle at the intersection of Pratt and Western.

Sergeant Veth testified that he was familiar with CPD General Order 97-03-02, entitled "Motor Vehicle Pursuits," which states, in part, that: "Members must be cognizant of the fact that motor vehicle pursuits are a serious matter with a potential for death and/or injury to the officers, persons in the vehicle being pursued and/or innocent persons in the area and property damage. They must also realize that they will not be able to apprehend every motorist they have probable cause to arrest. An officer involved in a motor vehicle pursuit must be prepared to justify his actions." Sergeant Veth testified that when he first saw Lowe fleeing in Oliva's squad car he determined that apprehending Lowe outweighed any risk to public safety, but that he terminated pursuit after approximately 50 to 80 feet, upon determining that due to the high rate of speed, the character of the neighborhood, and the manner in which Lowe was driving, the benefits of apprehending Lowe were outweighed by the risks posed to him, the general public and the suspect.

Officer Charles Elmer testified that he was on duty about a block away from the intersection of Pratt and California Avenues when he heard Oliva's radio transmission that someone had stolen a squad car and was headed eastbound on Pratt. Officer Elmer turned westbound on Pratt and saw Lowe's vehicle heading toward him at a high rate of speed. Officer Elmer made a U-turn, activated his Mars light, and started following Lowe's car. Officer Elmer did not notify his dispatcher that he was in pursuit. By the time Officer Elmer reached California Avenue, he had lost sight of Lowe's vehicle. Officer Elmer continued to drive east on Pratt and

next saw the stolen police car at the site of the collision. Officer Elmer testified that he did not see Officer Veth pursuing Lowe. In response to questions from plaintiffs' counsel, Officer Elmer acknowledged that the General Order 97-03-02 prohibits officers in marked units who are not part of a pursuit from following a vehicle with Mars lights illuminated and requires an officer to notify the dispatcher when he or she initiates or terminates pursuit of a fleeing suspect.

Lieutenant John Szmy, the watch commander, testified that he responded to the accident scene. He testified that when investigating traffic accidents, police officers frequently place the driver in the back of the squad car without handcuffs. However, he acknowledged that if Oliva arrested Lowe and put him in the back of the squad car without restraining him, he violated General Order 91-11, but testified that Lowe was not placed in custody and that Oliva did not believe Lowe was an arrestee.

Lieutenant William Frapolly testified that as part of his duties as field lieutenant in the 24th District, he reviewed reports of the February 22, 2002, incident. In response to questions from plaintiffs' counsel, Lieutenant Frapolly testified that General Order 91-11 states that persons in custody should be restrained and that Oliva admitted that he failed to secure Lowe, who was under arrest. Lieutenant Frapolly also testified that although Sergeant Veth said that he stopped pursuing Lowe, he believed Sergeant Veth continued the pursuit in violation of General Order 97-03-02.

Plaintiffs, Martinez and Ries, testified that Ries's car was stopped in the southbound, left-turn lane on Western Avenue, waiting to turn east on Pratt when they were struck by Lowe on the passenger side. Just before being hit, Martinez saw Lowe's vehicle traveling at approximately 60

miles per hour and shouted "look out." Ries testified that he did not hear or see the approaching police car until their car was struck.

Each side presented expert witnesses on police procedure. Plaintiffs' expert, John Bowman, opined that Oliva's conduct caused the squad car to be stolen. He testified that Oliva failed to comply with General Order 91-11 when he placed Lowe under arrest and put him in the back of the squad car without restraints, while the engine was running and the keys were in the ignition. As to the pursuit, Bowman testified that Sergeant Veth was the primary chase vehicle, that he was driving at 60 to 80 miles per hour, that he chased Lowe for one minute and five seconds and did not terminate the pursuit. Bowman testified that it was appropriate for Sergeant Veth to begin the pursuit but he should have stopped after Lowe hit parked cars, because General Order 97-03-02 says that pursuits should be terminated when the vehicle is involved in any property damage or personal injury accident. Bowman stated that if a pursuit is terminated, the fleeing suspect will stop "because he doesn't want to drive around the City in a stolen police car" and so "[y]ou assume the guy is going to bail out of the car and take off on foot." Bowman could not say for sure that the accident would not have occurred if the pursuit had been terminated, but said that "it would have certainly been much less likely that it would have occurred."

The City's expert, Russell Lane, stated that Oliva acted appropriately in trying to separate Lowe from the crowd by putting him in the squad car so that he could investigate the incident. He testified that it is not unusual for a police officer to put someone in the back of a squad car after a traffic accident without handcuffing him and that although Oliva did not follow General Order 91-11, he acted reasonably. He also testified that it is not unusual for officers to leave their

cars running while investigating a traffic accident and that Oliva did not act inappropriately in doing so because he was very close to his car. He stated that theft of a police car is a "very rare" occurrence and that Oliva did not have reason to believe that Lowe would steal the car.

Lane further testified that Sergeant Veth acted appropriately in initiating the pursuit and in continuing pursuit even after Lowe collided with parked vehicles, because the vehicles were unoccupied and there was a need to apprehend Lowe and get the squad car back. He also opined that continuing the pursuit was not the cause of the accident because "there was no way of knowing what Mr. Lowe was going to do" if the pursuit was terminated. Furthermore, Lane stated that given Lowe's speed, by the time Sergeant Veth would have terminated the pursuit and Lowe observed that the pursuit had ended, he would have already driven through the intersection and collided with plaintiffs, although he acknowledged that this conclusion was speculative.

The City made an offer of proof with regard to the testimony of forensic pathologist Dr. Daniel Brown. Dr. Brown would testify that Ries's cocaine metabolite level and cannabinoid in his blood at the time of the accident would have resulted in impairment that made Ries less likely to observe an approaching police car and avoid driving into its path, slowed his reaction time, and made him less likely to hear sirens or a collision with cars in the vicinity. Dr. Brown would testify that Ries's impairment was a contributing cause of the accident, but also that he had no information that Ries acted in an impaired state or was doing anything improper.

On March 1, 2007, the trial court stated that it was granting a directed verdict in Oliva's favor, in part, based on section 4-107 of the Tort Immunity Act, stating, "Insofar as you have predicated your case on the escape or the allowance of an escape *** that's immunized under the

Tort Immunity Act. The defendant's motion is well founded with respect to Oliva's conduct of the arrest or the failure to arrest or failure to allow an escape of 4-107 is well founded. And I'm granting the [directed verdict] on that." The court also stated that it was directing a verdict for Oliva on the claims regarding leaving the key in the car and the engine running because that "in and of itself does not arrive at willful and wanton conduct." The court stated that because Oliva was immune, the City was also immune pursuant to section 4-107 of the Act. Despite this finding, however, the court issued an order stating that it was denying the City's motion for a directed verdict against plaintiffs in all respects. The court did, however, grant the City a directed verdict on its third-party complaint for contribution against Lowe and granted Ries's motion for a directed verdict on the City's counterclaim for contribution.

During the jury instructions conference, the court stated that because of the directed verdict in Olivia's favor, plaintiffs could not argue in closing that Oliva's conduct was willful and wanton. However, the court noted that the plaintiffs' theory in the case had been that the "manner in which the police handled this incident was willful and wanton." Therefore, the court subsequently gave plaintiffs instruction No. 103, over the City's objection. Instruction No. 103, in part, asked the jury to determine if the City, through its employees, was willful and wanton in one or more ways, including the following conduct by Oliva: failing to prevent the misappropriation of a police vehicle; failing to properly investigate a traffic accident; failing to properly conduct a hit and run investigation; failing to prevent theft of a police vehicle; failing to prevent the unauthorized use of a police vehicle; and failing to properly execute or enforce the law during a traffic accident. Instruction No. 103 also asked the jury to determine whether the

1-07-3085

City was willful and wanton in failing to terminate a motor vehicle pursuit when apprehension of the fleeing motorist was outweighed by the inherent danger created by the pursuit to the general public; when the speeds of the pursuit exceeded posted speed limits and the speeds and maneuvering practices engaged therein caused an inherent danger to the general public; when the volume of pedestrian and vehicular traffic endangered the safety of the traveling public; after the fleeing vehicle was involved in a property damage accident; and after the fleeing vehicle violated traffic signs or signals.

The jury returned a verdict for the plaintiffs. Damages were awarded in the amount of $4,052,073 for Ries and $159,069 for Martinez, and the jury apportioned 35% of the fault to the City and 65% to Lowe. Answering a special interrogatory, the jury also found that the City engaged in a course of conduct that showed an utter indifference to or conscious disregard for the safety of others. The court entered judgment on the verdict and awarded costs of $1,775. The trial court denied the City's posttrial motion for a judgment *n.o.v.* or in the alternative for a new trial. The City now appeals.

## II. ANALYSIS

On appeal, the City contends that it is entitled to a judgment *n.o.v.* or, alternatively, that a new trial should be granted. Because we find that a judgment *n.o.v.* is warranted in this case, we do not address whether a new trial should be granted.

A motion for judgment *n.o.v.* should only be granted in those limited cases where all of the evidence and the inferences therefrom, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could

1-07-3085

ever stand. Thornton v. Garcini, 382 Ill. App. 3d 813, 817 (2008). When ruling upon such a motion, the court does not weigh the evidence or make determinations of credibility and must not substitute its judgment for that of the jury merely because there are other inferences or conclusions that the jury could have drawn or because there are other results that the court believes are more reasonable. Thornton, 382 Ill. App. 3d at 817. " 'The court has no right to enter a judgment [notwithstanding the verdict] if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome.' " Thornton, 382 Ill. App. 3d at 817 quoting Maple v. Gustafson, 151 Ill. 2d 445, 454 (1992). A trial court's ruling on a motion for judgment *n.o.v.* is subject to a *de novo* standard of review. Thornton, 382 Ill. App. 3d at 817. When the trial court has erroneously denied a motion for judgment *n.o.v.*, we will reverse the verdict without a remand. Petre v. Cardiovascular Consultants, S.C., 373 Ill. App. 3d 929, 939 (2007), citing Maple v. Gustafson, 151 Ill. 2d 445, 453 (1992).

The City contends that it is entitled to judgment *n.o.v.* because it is immune from liability for the conduct of Oliva and the two officers who pursued Lowe pursuant to sections 2-109, 4-106(b), 4-107 and 4-102 of the Tort Immunity Act. The City also argues that the trial court erred in permitting the jury to consider whether the City could be held liable for willful and wanton conduct under section 2-202 of the Act. The trial court's instructions to the jury regarding the City's liability for the willful and wanton conduct of its employees can be divided into two categories: Oliva's conduct in failing to prevent Lowe from stealing the squad car and the police

-13-

1-07-3085

officers' conduct in pursuing Lowe. We will address each in turn.

### A. City's Immunity for Officer Oliva's Conduct

First, as to Oliva's conduct, the City argues that it is entitled to a judgment *n.o.v.* pursuant to section 2-109 of the Tort Immunity Act. Section 2-109 provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2006). The City asserts that plaintiffs' theory of City liability in this case was *respondeat superior* and that because the trial court ruled that Oliva was immune from liability and that his conduct was not willful and wanton, the City, as his employer, should also not be found liable. For support, the City cites Kirk v. Michael Reese Hospital & Medical Center, 117 Ill. 2d 507, 533 (1987), which held that "[w]here the agent is not guilty, it necessarily follows that the party for whom he acted, the master, cannot be guilty." The City also asserts that because the plaintiffs did not appeal the directed verdict in Oliva's favor, the City is entitled to a judgment *n.o.v.* on claims involving his conduct. See, e.g., Bausback v. K mart Corp., 194 Ill. App. 3d 325, 330-31 (1990) (finding that the trial court erred in denying an employer's motion for judgment *n.o.v.* after the jury exonerated individual employees on claims of false imprisonment and battery).

Plaintiffs contend, however, that the City is not entitled to a judgment *n.o.v.* because the trial court only issued a partial directed verdict in Oliva's favor and did not address all of the charges related to Oliva's conduct. In particular, the plaintiffs assert that the circuit court's directed verdict only addressed charges related to failing to make an arrest or releasing a person in custody, which is addressed in section 4-107 of the Act, and did not address charges related to

-14-

leaving the key in the ignition. As plaintiffs acknowledge, the record shows that the trial court's statements about the extent and effect of the directed verdict in Oliva's favor were unclear, with the court stating at times that it was directing a verdict under sections 4-106 and 4-107 of the Act and at other times stating that it was only under section 4-107 and also stating that it covered all of Oliva's conduct including his leaving the keys in the ignition, while at other times stating that it only addressed his failure to arrest Lowe. However, plaintiffs assert that despite this lack of clarity, the trial court's decision to permit the plaintiffs' jury instruction to include charges related to Oliva's conduct shows that the court did not enter a directed verdict on the charges related to Lowe's taking of the car, and therefore the City is not entitled to a judgment *n.o.v.* on that ground.

We disagree. The court's directed verdict order stated: "The court grants a directed verdict in favor of Sergio Oliva and against plaintiff and for costs." It did not limit the directed verdict to only certain aspects of Oliva's conduct nor did it state that it was only a partial directed verdict. Although the trial court's in-court statements regarding the directed verdict were less than clear, the court did plainly assert that, afterward, Oliva was not a party to the case. The court stated more than once that Oliva is "no longer a party to this case" and that "Oliva has been dismissed out of this case," and that for that reason, plaintiffs could not argue to the jury in closing that his conduct was willful and wanton. While plaintiffs argue that the trial court's inclusion of Oliva's conduct in the jury instructions is evidence that the directed verdict was only partial, it actually shows the trial court erred in issuing its jury instructions. Once the trial court found that Oliva was no longer a party to the case because he was immune from liability and his

-15-

conduct was not willful and wanton, the court should not have issued an instruction that permitted the jury to find the City liable based on his conduct. Pursuant to section 2-109, a local public entity, like the City cannot be held liable for an injury resulting from an act or omission of an employee where the employee is not liable. 745 ILCS 10/2-109 (West 2006). Therefore, the City cannot be held liable for willful and wanton conduct in relation to Oliva's conduct.

B. City's Immunity for Police Conduct During Pursuit

We now turn to the conduct of the two police officers who pursued Lowe up to the point when he crashed into plaintiffs' vehicle. The City contends that it is immune from liability for their conduct pursuant to section 4-106(b) of the Tort Immunity Act, which provides immunity to public entities and public employees for "[a]ny injury inflicted by an escaped or escaping prisoner." 745 ILCS 10/4-106(b) (West 2006). The City also argues that the trial court erred in letting the case go to the jury on the basis that the City could be held liable under section 2-202 of the Act for willful and wanton conduct because section 2-202 does not limit the absolute immunity provided by section 4-106 of the Tort Immunity Act and could not apply in the instant case because the case went to the jury only against the City and not an individual City employee. The issue of section 4-106 immunity is addressed first and then we address whether section 2-202 provides an exception to that grant of immunity.

Plaintiffs assert that section 4-106 does not immunize the City from liability for the police officers' failure to terminate pursuit. Plaintiffs assert that their lawsuit was not premised on the injuries caused by an escaping prisoner but rather by the police officers' failure to terminate pursuit, which caused Lowe to drive recklessly and crash into them. Whether or not Lowe was

1-07-3085

an escaped prisoner was immaterial, plaintiffs contend; he drove recklessly because he was being chased by the police, not because he was a prisoner. We disagree. In determining whether an arrest has occurred and, therefore, whether a person is in custody, this court must determine whether, in light of the surrounding circumstances, a reasonable innocent person would have considered himself free to leave. People v. Washington, 363 Ill. App. 3d 13, 23-24 (2006). Illinois courts consider the following factors in determining whether an arrest has occurred: (1) the time, place, length, mood, and mode of the encounter between the defendant and the police; (2) the number of police officers present; (3) any indicia of formal arrest or restraint, such as the use of handcuffs or drawing of guns; (4) the intention of the officers; (5) the subjective belief or understanding of the defendant; (6) whether the defendant was told he could refuse to accompany the police; (7) whether the defendant was transported in a police car; (8) whether the defendant was told he was free to leave; (9) whether the defendant was told he was under arrest; and (10) the language used by officers. Washington, 363 Ill. App. 3d at 24. No single factor is dispositive, and in each case the court considers all of the circumstances surrounding the detention. Washington, 363 Ill. App. 3d at 24.

In this case, Oliva placed Lowe in the back of the squad car to investigate allegations that Lowe was trying to flee the scene of an accident. Lowe clearly did not consider himself free to leave as he then decided to steal the squad car in order to escape and was still trying to escape when he crashed into plaintiffs' car. In addition, the record shows that plaintiffs agreed that Lowe was under arrest when he was placed in the back of the squad car, by eliciting testimony at trial from Oliva and their expert witness to show that Oliva violated General Order 91-11,

-17-

entitled "Restraining Arrestees," by failing to properly restrain a person taken into CPD custody. This conduct falls within the meaning of section 4-106 of the Tort Immunity Act, and therefore, under the plain language of that provision, the City is immune from liability injuries inflicted by Lowe as an escaped or escaping prisoner.

Plaintiffs contend that basing the City's liability for injuries that result from an improper pursuit on whether or not the driver of the car being chased is a prisoner would improperly expand the immunity provided by section 4-106. Plaintiffs cite Fatigato v. Village of Olympia Fields, 281 Ill. App. 3d 347 (1996), for support. In Fatigato, plaintiffs sued the municipality and two police officers alleging that the officers were guilty of willful and wanton conduct when, in responding to a domestic dispute, they ordered the husband to leave the house and, while driving intoxicated, he crashed into plaintiffs' automobile. Fatigato, 281 Ill. App. 3d at 348-50. Relying on Doe, this court found that police officers can be held liable for injuries proximately caused by their willful and wanton conduct in the enforcement and execution of the law under section 2-202. Fatigato, 281 Ill. App. 3d at 354. Plaintiffs contend that pursuant to the City's view of section 4-106 of the Act, if that driver had been an escaped prisoner, the plaintiffs would not be able to recover and the legislature did not intend such a result because the officer's conduct in that scenario would be separate from the driver's "escaped prisoner" status. Plaintiffs' reliance on Fatigato, however, is misplaced, first because it did not involve section 4-106(b) regarding escaped or escaping prisoners and secondly because, as will be discussed below, Doe, on which the Fatigato court relied, was limited by our supreme court in DeSmet v. County of Rock Island, 219 Ill. 2d 497 (2006).

1-07-3085

Section 2-202 of the Tort Immunity Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202 (West 2006). The City asserts that the trial court erred in permitting the jury to find the City liable under section 2-202 because (1) courts have rejected the idea that section 2-202 provides a willful and wanton exception to other immunities in the Act or otherwise provides a cause of action for willful and wanton conduct; and (2) section 2-202 only applies to municipal employees, not to public entities, like the City.

The argument that section 2-202 creates a willful and wanton exception that can limit the absolute immunities afforded by other provisions of the Tort Immunity Act derives primarily from Doe v. Calumet City, 161 Ill. 2d 374 (1994), and its progeny. In Doe, an intruder broke into Jane Doe's apartment in the middle of the night and threatened to rape and kill her. Doe, 161 Ill. 2d at 381. Jane pleaded with the intruder not to attack her in front of her two children. Doe, 161 Ill. 2d at 381. As the intruder directed the children out of the bedroom, Jane ran out the front door of the apartment. Doe, 161 Ill. 2d at 381. The intruder locked himself inside the apartment with the children. Doe, 161 Ill. 2d at 381. When the police arrived, Jane told Officer Horka what happened, explaining that her children were still in danger inside the apartment. Doe, 161 Ill. 2d at 381-82. Despite Jane's and her neighbors' repeated requests, Officer Horka refused to break down the locked door because he did not want to be responsible for the property damage. Doe, 161 Ill. 2d at 382. Other officers restrained Jane and prevented the neighbors from breaking down the door. Doe, 161 Ill. 2d at 382. Officer Horka continued to refuse to enter the apartment, despite direct orders from his supervisor, knowledge that both the rear balcony and

-19-

door were ajar, and an offer by paramedics for a "lock pick," locksmith and ladder. Doe, 161 Ill. 2d at 382-83. Eventually, a police department investigator arrived and discovered that the back door of the apartment was unlocked. Doe, 161 Ill. 2d at 383. Upon entering the apartment he found that the intruder had repeatedly raped Jane's daughter and had choked and threatened her son. Doe, 161 Ill. 2d at 383. Jane, on behalf of herself and her children, sued Calumet City, Officer Horka, and several other officers charging them with negligence, intentional infliction of emotional distress, and gender discrimination.

Our supreme court reversed the trial court's order granting the municipality's motion to dismiss, recognizing a willful and wanton exception to the immunity otherwise provided by section 4-102 of the Act. Doe, 161 Ill. 2d at 385-86. The court held that where the complaint repeatedly alleged that Officer Horka was in control of the entire crime scene, including the actions of the other officers, a rational trier of fact could find that his conduct was willful and wanton, thereby excepting him from immunity. Doe, 161 Ill. 2d at 390-91. However, the allegations were insufficient to create a jury question regarding willful and wanton conduct by the other officers who had responded to the scene. Doe, 161 Ill. 2d at 391. Subsequent cases, relying on Doe, similarly held that section 2-202's exception for willful and wanton conduct prevailed over the immunity provided by section 4-102 of the Act. See Fatigato, 281 Ill. App. 3d 347 (citing Doe to find that section 2-202's exception for willful and wanton conduct prevailed over the immunity afforded by section 4-102); Ozik v. Gramins, 345 Ill. App. 3d 502 (2003) (holding that Doe abrogated cases relied on by police officers to support their argument that section 4-102 provided blanket immunity over section 2-202's willful and wanton exception).

The City argues that section 2-202's willful and wanton exception has only been applied to section 2-102 of the Tort Immunity Act and there is no basis to apply it to the absolute immunity provided by section 4-106(b) regarding escaped or escaping prisoners. We agree with the City. Even if we agreed with plaintiff's position, we would hold that section 2-202's willful and wanton exception would not apply to section 4-106(b) under the facts of this case.

The holding in Doe and its progeny was recently limited by DeSmet v. County of Rock Island, 219 Ill. 2d 497 (2006). In DeSmet, a passing motorist witnessed a car drive off the road and into a ditch and reported the accident by telephone, but police and rescue personnel failed to respond, and the driver of the car died. DeSmet, 219 Ill. 2d at 500-02. On appeal to our supreme court, the defendants, which included several local government entities and their employees, contended that they did not owe a duty to the plaintiff or, in the alternative, were immune under section 4-102 of the Act. DeSmet, 219 Ill. 2d at 500. The plaintiff, citing Doe, asserted that defendants engaged in willful and wanton conduct pursuant to section 2-202 of the Act and, therefore, were not afforded immunity under section 4-102 of the Act. DeSmet, 219 Ill. 2d at 515.

Our supreme court declined to address whether defendants owed the plaintiff a duty and instead disposed of the case by analyzing the immunity issue. The court distinguished the facts from Doe, noting that in DeSmet: (1) the police did not respond to the scene; (2) even if the police had responded, they would not have been "enforcing or executing" the law; and (3) the police did not exert control over the scene and therefore did not alter the circumstances, for better or worse. DeSmet, 219 Ill. 2d at 520-21. As a result, the court found that because the police were

not executing or enforcing the law and did not exercise control over the injured driver, section 2-202 did not operate as an exception to section 4-102 immunity. DeSmet, 219 Ill. 2d at 521.

This court recently applied DeSmet in Anthony v. City of Chicago, 382 Ill. App. 3d 983 (2007), where the plaintiffs sued the City for damages resulting from patrons' deaths at a nightclub after a disturbance that resulted in a pileup in the stairwell. The plaintiffs alleged that the City engaged in willful and wanton conduct by allowing an excessive number of people to enter the nightclub despite knowledge that it was structurally unsafe, lacked adequate exits, and was operating in violation of occupancy limits, municipal ordinances, and court orders and by undertaking the police duty of crowd control but then failing to extricate trapped patrons. Anthony, 382 Ill. App. 3d at 986. On interlocutory appeal, this court considered, *inter alia,* whether section 2-202 created an exception to the immunity afforded by section 4-102 of the Act. Anthony, 382 Ill. App. 3d at 985. The court noted that DeSmet limited the conjunctive applicability of the willful and wanton exception in section 2-202 to section 4-102 of the Act and the unique facts present in Doe. Anthony, 382 Ill. App. 3d at 991. The DeSmet court emphasized that the conduct of the officer who controlled the scene and prevented others from rescuing the endangered children was a distinguishing fact critical to Doe's holding. Anthony, 382 Ill. App. 3d at 995. The Anthony court found that the plaintiffs failed to allege facts sufficient to show that the City exercised the requisite degree of control over the scene in a manner that altered the status quo to the club patrons' detriment. Anthony, 382 Ill. App. 3d at 995. The court noted that there were no allegations, as there were in Doe, that the police restrained or prevented anyone from rendering assistance. Anthony, 382 Ill. App. 3d at 995.

1-07-3085

Therefore, the court concluded that section 2-202 did not apply as an exception to section 4-102 immunity. Anthony, 382 Ill. App. 3d at 995.

In this case, the City, relying on DeSmet and Anthony, asserts that plaintiffs cannot invoke section 2-202 as a basis to hold the City liable for the police conduct in pursuing Lowe, because no evidence was presented showing that the officers were in control of the scene when the plaintiffs were injured or prevented others from assisting, which the City asserts is required in order to invoke section 2-202. Plaintiffs argue, however, that this case is distinguishable from DeSmet, because it involves active pursuit rather than a failure to come to the scene. Given that the police were chasing Lowe, they were exercising some control over the scene, plaintiffs contend. Plaintiffs also assert that neither section 2-202 nor DeSmet states that section 2-202 only applies when the police actively prevent other people from rendering assistance.

We find, pursuant to DeSmet, that because the police officers who pursued Lowe did not control the scene at the intersection where the plaintiffs were injured, the plaintiffs cannot invoke section 2-202 as an exception to section 4-106 immunity. First, the plaintiffs are correct in asserting that section 2-202 is not limited to cases where the police prevented others from rendering assistance, although such actions by the police would provide strong evidence that they are in control of the scene. In Doe, Officer Horka's refusal to allow others to provide assistance was determinative of the issue of control of the scene. Doe, 161 Ill. 2d at 390-91. Subsequently, in Anthony, this court held that the police did not exercise the requisite degree of control over the scene, noting that there were no allegations that the police restrained or prevented someone from rendering assistance. Anthony, 382 Ill. App. 3d at 995. However, because there could be

-23-

instances in which the police are in control of a scene even though they are not actively preventing others from assisting, we reject the City's assertion that this is a requirement for invoking section 2-202.

That said, we find that in this case, there is not adequate evidence of police control of the scene of the accident in order to invoke section 2-202 of the Act. Plaintiffs contend that the police officers' pursuit inherently means that they controlled the scene of the accident. However, the police were not present at the intersection of Pratt and Western at the time of the accident and they had no direct control over the plaintiffs, as Officer Horka did in Doe. Therefore, we find that section 2-202 of the Act does not apply here as an exception to section 4-106 immunity.

The City also contends that section 2-202 of the Act does not apply here because the case went to the jury only against the City and not any individual City employee. "The plain language of section 2-202 of the Act states that a " '*public employee* is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.' (Emphasis added.) 745 ILCS 10/2-202 (West 2006)." Anthony, 382 Ill. App. 3d at 995-96. This court has held that section 2-202 does not apply as an exception to section 4-102 of the Act when the complaint did not name an individual public employee as a defendant. Barnes v. Chicago Housing Authority, 326 Ill. App. 3d 710, 719 (2001).

Plaintiffs first assert that Barnes does not apply here because the discussion of section 2-202 was mere dicta. This argument is of no consequence, however, since subsequent opinions issued by this court have concurred with Barnes on this issue. See Ware v. City of Chicago, 375 Ill. App. 3d 574, 581 (2007)("[section 2-202] explicitly addresses *public employees*, not

1-07-3085

government entities such as the City" (emphasis in original)); Anthony, 382 Ill. App. 3d at 995-96 ("The plain language of section 2-202 does not purport to apply to *public entities*, such as the City." (emphasis in original)).

Plaintiffs also assert that Barnes is distinguishable from this case because they are suing the City under *respondeat superior* while the plaintiffs in Barnes sued the Chicago Housing Authority for institutional negligence and did not plead that specific acts by CHA employees resulted in damages. Because under *respondeat superior* the City would be liable for the willful and wanton conduct if one of its employees is liable, plaintiffs assert that it is more reasonable to find that the legislature intended section 2-202 of the Act to cover municipal entities and municipal employees, even if only one is named. Further, plaintiffs assert that the legislature did not intend to limit section 2-202 to situations where the municipal employee could be identified.

We disagree. As this court noted in Ware, section 2-202 does not create a basis for liability. Ware, 375 Ill. App. 3d at 581. Instead, willful and wanton conduct is only considered, after it has been determined that the plaintiff is owed a duty by the municipality, in analyzing whether it is liable for a breach of that duty or whether it is immune under the Tort Immunity Act. Ware, 375 Ill. App. 3d at 581, citing Village of Bloomingdale v. CDG Enterprises, Inc., 196 Ill. 2d 484, 490 (2001).

In the instant case, the plaintiffs named Oliva and the City as defendants. The two officers who were involved in the pursuit of Lowe were never named as defendants. However, before the case went to the jury, Oliva was dismissed pursuant to the trial court's directed verdict, leaving the City as the only named defendant. Because the City was the only remaining

-25-

1-07-3085

defendant and section 2-202 of the Act does not apply to entities, it cannot be used to uphold a judgment against the City.

### III. CONCLUSION

Pursuant to section 2-109 of the Tort Immunity Act, "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2006). Therefore, after the trial court granted a directed verdict in favor of Oliva, it should not have permitted the jury to consider whether the City engaged in willful and wanton conduct based on Oliva's actions, as the City was immune from liability. The City was also immune from liability pursuant to section 4-106 of the Tort Immunity Act for the conduct of the police officers who pursued Lowe after he stole the police squad car, and the trial court erred in permitting the jury to consider whether the City could be held liable for willful and wanton conduct under section 2-202 of the Act.

For the reasons set forth above, we reverse the order of the trial court denying the City's motion for judgment *n.o.v.*

Reversed.

MURPHY, P.J. and COLEMAN, J., concur.

1-07-3085