2021 IL App (1st) 201269-U

No. 1-20-1269

Filed August 19, 2021

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MARCOS RODRIGUEZ, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18 L 12670 |
| | ) | |
| THE VILLAGE OF PARK FOREST, | ) | |
| a municipal corporation, and | ) | |
| JAMES KESSLER, | ) | The Honorable |
| | ) | Christopher E. Lawler, |
| Defendants-Appellees. | ) | Judge Presiding |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   A police officer and Village are immune from liability when the police officer allowed a motorist to drive away after a minor traffic accident without investigating whether the driver was under the influence of alcohol and the driver, who was intoxicated, was subsequently injured in a crash.

¶ 2   Marcos Rodriguez appeals the circuit court's order granting summary judgment to defendants James Kessler and the Village of Park Forest, Illinois. Rodriguez sustained injuries when he fell asleep at the wheel and his vehicle left the roadway, rolled over, and struck a utility

pole. Upon being transported to a hospital, Rodriguez was discovered to have a blood alcohol concentration of 0.24. Preceding the crash, Rodriguez was involved in a minor traffic accident with another vehicle. The driver of the other car called police and Kessler, a Park Forest police officer, responded. Rodriguez asserts that he exhibited clues of intoxication, which should have prompted Kessler to investigate whether he was driving under the influence of alcohol (DUI). However, Kessler did not investigate Rodriguez for DUI and allowed him to drive away. Thus, he claims Kessler's failure to investigate and prevent him from driving after the earlier accident was willful and wanton conduct making the officer and the Village liable based on the qualified immunity afforded under section 2-202 of the Local Government and Governmental Employees Tort Immunity Act ("Tort Immunity Act") (745 ILCS 10/2-202 (West 2016)). In granting summary judgment in favor of the defendants, the trial court found the defendants did not owe Rodriguez a duty and, therefore, could not be liable. In addition, the court found that even if the defendants owed Rodriguez a duty, applicable sections of the Tort Immunity Act concerning the provision of adequate police services (*id*. § 4-102) and the failure to make an arrest (*id*. § 4-107) conferred absolute immunity from Rodriguez's claim. For the following reasons, we affirm.[1]

¶ 3                                          I. BACKGROUND

¶ 4        Marcos Rodriguez went to his friend Todd Senholtz's house in Park Forest, Illinois to watch a football game on the evening of December 7, 2017. Rodriguez and Senholtz watched the game and drank in the "man cave" of Senholtz's garage until 5:30 a.m. During his visit, Rodriguez steadily consumed an entire bottle of whiskey. Senholtz told Rodriguez he was "not okay to drive" and invited Rodriguez to sleep at his house. Rodriguez wanted to return to his home in New Lenox, Illinois. Despite being "conscious that [he] was drunk" and feeling the effects from the whiskey,

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

Rodriguez "made [his] own decision" to "take [his] own chances." After departing, Rodriguez called his girlfriend. She told him he was not "okay" and implored him to pull over and tell her where he was. Rodriguez insisted he was "okay to drive" and continued.

¶ 5        A short time after leaving his friend's house, Rodriguez bumped into the rear of Kimberly Taylor's car, which was stopped at a traffic light on Sauk Trail at the intersection with Shabbona Drive. Taylor and Rodriguez both exited their cars and had a brief conversation. Taylor believed that Rodriguez was drunk. In deposition testimony, Taylor denied that Rodriguez smelled of alcohol or exhibited bloodshot eyes, slurred speech, or unsteady balance. The sole basis for her belief was that she observed his vehicle weave across lanes of traffic before the accident. The collision occurred at a low speed, neither driver was injured, and there was no significant damage to either car. Nevertheless, Taylor decided to call the Park Forest police to report the accident.

¶ 6        Officer James Kessler arrived at the scene of the collision. Rodriguez was in the driver's seat of his vehicle and Taylor was standing outside of hers. Kessler asked Taylor to return to her car for her safety, as traffic passed in both directions on either side of the two stopped cars. After obtaining some basic information from both drivers, Kessler asked Taylor to exit her car and walk to the rear to assess any damage. While doing so, Taylor informed Kessler that she had observed Rodriguez weave across lanes while driving ahead of her. She explained that she passed Rodriguez and he rear-ended her at the intersection where she had stopped for a red light. In an affidavit, Taylor attested that she told Kessler that she believed Rodriguez was drunk. But in her deposition testimony, Taylor was unsure. Dashcam video from Kessler's police cruiser captured the encounter. The audio quality is poor at times making it difficult to discern the entirety of what was said. Of what can be heard clearly, Taylor and Kessler primarily discuss the lack of damage to her car and probable responses from the insurance company if she were to make an insurance claim.

Taylor can be heard telling Kessler that Rodriguez weaved, but the audio never clearly depicts her telling him that she believed Rodriguez was drunk.

¶ 7    Kessler also spoke with Rodriguez, who remained in his vehicle. After Kessler asked Rodriguez to provide proof of insurance, Rodriguez sifted through various papers in his vehicle and twice presented other documents, such as a utility bill. Kessler responded, "that has nothing to do with insurance." Eventually, Rodriguez handed Kessler a card with insurance information. While Rodriguez was searching for the insurance card, Kessler asked him where he lived. Rodriguez responded by "rattl[ing] off" several digits. Later, Kessler asked Rodriguez to provide his phone number. In the video, Rodriguez can be heard reciting a phone number with clear speech. In his deposition, Kessler testified he did not detect an odor of alcohol, though he had a cold at the time, which inhibited his sense of smell.

¶ 8    According to his deposition testimony, Rodriguez believed his intoxication caused him to hit Taylor's car and, at that time, thought it was unsafe for him to continue driving. He explained, however, that he did not inform Kessler that he had been drinking because he was scared and did not want to be arrested or go to jail.

¶ 9    Ultimately, Kessler gave Taylor a note on which he wrote the incident number assigned to the reported accident and a phone number to contact him. He told Taylor she could go, and she drove away. Kessler then gave Rodriguez a similar note, told him to pay attention, and instructed him to pull forward. (The traffic light was red at that point, but Rodriguez's vehicle was about two car lengths from the stop line). Kessler told Rodriguez to pull forward a second time as Rodriguez did not respond promptly to Kessler's first instruction. Eventually, Rodriguez pulled forward and into the adjacent left turning lane. His vehicle came to a stop ahead of the line and extended midway into the marked crosswalk. Kessler returned to his vehicle.

¶ 10    In his deposition, Rodriguez testified he felt unsafe when driving after the accident with Taylor, but instead of pulling over or calling someone to pick him up, he continued driving because he was "hardheaded" and just wanted to go home. About 20 minutes later and 12 miles away on Laraway Road in Will County, Rodriguez fell asleep at the wheel and drove off the road.[2] The Hyundai Sante Fe SUV Rodriguez was driving struck a utility pole and rolled over. Paramedics transported Rodriguez to Silver Cross Hospital. His blood alcohol concentration was found to be 0.24. Rodriguez later pled guilty to DUI in Will County stemming from this incident. Rodriguez suffered injuries to his spine and ribs and underwent back surgery.

¶ 11    Rodriguez brought this action charging Kessler with negligence in count I and willful and wanton conduct in count II. He also sought recovery from the Village of Park Forest under the doctrine of *respondeat superior*. The trial court granted the defendants' motion to dismiss the negligence count (count I) finding they were immune from the claim under section 4-102, which provides that local public entities and employees are not liable for failure to provide adequate police protection or service. The trial court denied the defendants' motion to dismiss the willful and wanton conduct count (count II) and permitted additional discovery. As noted above, the circuit court later granted the defendants' motion for summary judgment on count II, finding the defendants did not owe Rodriguez a duty and would otherwise be immune under sections 4-102 and 4-107 of the Tort Immunity Act. Rodriguez appeals from the circuit court's order granting summary judgment to defendants on count II.

¶ 12                                  II. ANALYSIS

¶ 13    We review an appeal from the circuit court's grant of summary judgment *de novo*. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. *De novo* review means we conduct the same analysis the circuit

_____

[2]Sauk Trail becomes Laraway Road at South Harlem Avenue, the line between Cook and Will counties.

court would perform. *Payne v. City of Chicago*, 2014 IL App (1st) 123010, ¶ 19. We are not confined to the circuit's reasoning and may affirm based on any reason found in the record. *Mitchell v. Village of Barrington*, 2016 IL App (1st) 153094, ¶ 26. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Seymour*, 2015 IL 118432, ¶ 42. A fact is material if its resolution could determine the outcome under applicable law. *Payne*, 2014 IL App (1st) 123010, ¶ 17 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We construe the record strictly against the movant and liberally in favor of the nonmoving party. *Seymour*, 2015 IL 118432, ¶ 42. If the record discloses a dispute as to a material fact, reasonable minds could draw divergent inferences from undisputed material facts, or reasonable people could differ on the weight to be given relevant factors, summary judgment is not appropriate. *Id.*

¶ 14    In Illinois, governmental entities were originally immune from tort liability under the doctrine of sovereign immunity. *DeSmet ex rel. Estate of Hays v. County of Rock Island*, 219 Ill. 2d 497, 505 (2006). After our supreme court abolished sovereign immunity in 1959, the legislature enacted the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2016)) for the purpose of " 'protect[ing] local public entities and public employees from liability arising from the operation of government.' " *DeSmet*, 219 Ill. 2d at 505 (quoting *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill. 2d 484, 490 (2001)). Governmental entities bear the burden of proving their immunity under the Tort Immunity Act. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 370 (2003).

¶ 15    At the outset, we note that the existence of a duty and the existence of an immunity are separate issues. *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶ 46. The defense

of immunity is considered only after a duty is found (*id.*), but courts may assume a duty in their analysis to resolve issues of immunity. *DeSmet*, 219 Ill. 2d at 509. For expedience, we do so here.

¶ 16 This case potentially implicates several provisions of the Tort Immunity Act and the parties dispute which provisions are controlling as some provisions provide absolute immunity while one provision provides only qualified immunity with an exception for willful and wanton conduct. Indeed, Rodriguez relies on section 2-202 of the Tort Immunity Act, which provides:

> A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct. 745 ILCS 10/2-202 (West 2016).

¶ 17 In arguing for reversal, Rodriguez asserts that section 2-202 allows him to maintain his action as he contends that Kessler was executing and enforcing the law when he responded to the accident involving Taylor and Rodriguez at the intersection of Sauk Trail and Shabbona Drive (or at least a material issue of fact exists as to whether Kessler was executing and enforcing the law). Rodriguez further contends Kessler's failure to investigate whether he was intoxicated amounted to willful and wanton conduct. The Tort Immunity Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2016). Whether conduct is willful and wanton is generally a question of fact to be resolved by a jury. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 27.

¶ 18 The defendants assert, among other arguments, that they are entitled to immunity under other provisions of the Tort Immunity Act, including section 4-102 (745 ILCS 10/4-102 (West 2016)), which provides immunity for failure to provide adequate police protection or service, and section 4-107 (745 ILCS 10/4-107 (West 2016)), which provides immunity for failure to make an

arrest. Sections 4-102 and 4-107 provide absolute immunity. *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 360 (2009). The willful and wanton conduct exception found in section 2-202 is not read into other sections of the Tort Immunity Act, such as sections 4-102 and 4-107, which do not contain comparable language excepting willful and wanton conduct. *Ries v. City of Chicago*, 242 Ill. 2d 205, 227 (2011). Accordingly, the defendants are entitled to immunity if either section applies.

¶ 19 A public employee is enforcing a law, and thereby section 2-202 is implicated, when the public employee "engage[s] in a course of conduct designed to carry out or put into effect any law." *Fitzpatrick v. City of Chicago*, 112 Ill. 2d 211, 221 (1986). Whether a public employee was enforcing a law during the alleged act or omission giving rise to the plaintiff's injury is generally a question of fact unless the alleged facts only support one conclusion. *Lacey*, 232 Ill 2d at 367. If so, a court may determine the issue as a matter of law. *Id.* Yet, even if a public employee was enforcing a law, the absolute immunity afforded by another section will prevail over section 2-202's qualified immunity when the facts fall within the more specific application of another section. See *Ries*, 242 Ill. 2d at 220-21 (finding section 4-106(b)'s absolute immunity for injury inflicted by an escaping prisoner prevailed over section 2-202 when the undisputed allegations showed the plaintiff was injured by an escaping prisoner).

¶ 20 Illinois courts have found that a police officer who, as in this case, responded to a traffic accident and investigated damage to the automobiles was "in the process of executing or enforcing the applicable traffic laws," and, thus, section 2-202 applied. *Fitzpatrick*, 112 Ill. 2d at 222. In *Fitzpatrick*, the plaintiff was injured while standing on the shoulder of a highway when a car struck and pushed a police vehicle—which the officer left parked partially in the roadway when responding to investigate a prior accident—into the plaintiff. *Id.* at 215. In contrast, a police officer

who responded to an accident and assisted a stranded motorist but did not investigate the scene was found not to be enforcing the law. *McElmeel v. Village of Hoffman Estates*, 359 Ill. App. 3d 824, 829 (2005). Rather, the officer was providing police protection or service, which includes "police efforts to aid, assist, or rescue." *Payne*, 2014 IL App (1st) 123010, ¶ 33. Likewise, our supreme court observed that police responding to a report of a car running off the road would be performing a "community caretaking function," not enforcing or executing the law. *DeSmet*, 210 Ill. 2d at 520. Thus, section 4-102's blanket immunity applied over section 2-202 in both cases. *Id*. at 521; *McElmeel*, 359 Ill. App. 3d at 829.

¶ 21    In this case, Kessler responded to a report of a minor auto collision and, therefore, could be construed to have been "in the process of executing or enforcing the applicable traffic laws" like the officer in *Fitzpatrick*. However, as set forth in his complaint, Rodriguez premises the defendants' liability on the following:

a. Allowed Plaintiff to leave the scene unattended and unsupervised while in an intoxicated state, despite knowing that allowing Plaintiff to leave in such a state would place him in danger;

b. Failed to place the Plaintiff in custody until someone who was not intoxicated picked him up despite knowing that allowing Plaintiff to leave in such a state would place him in danger;

c. Failed to follow [the Park Forest Police Department's] own policies and procedures for handling the arrest and release of an intoxicated person, despite knowing that allowing Plaintiff to leave in such a state would place him in danger;

d. Failed to adequately question Plaintiff;

e. Failed to perform any sobriety tests on Plaintiff;

    f.   Failed to perform an ethanol breathalyzer test on Plaintiff;

    g.   Failed to take any additional actions when Plaintiff continued to drive away from the scene recklessly;

    h.   Otherwise improperly conducted a police stop where Defendant had a duty to ascertain if there was reasonable or probable cause for further investigation.

¶ 22       These alleged omissions clearly relate to the failure to arrest Rodriguez for driving under the influence of alcohol—either an arrest itself, investigative procedures that would yield probable cause for such an arrest, or consequences that would follow from a DUI arrest. Thus, Rodriguez's claim comes within the more specific purview of failure to arrest covered by section 4-107 than the more general "execut[ion] or enforc[ement] of the applicable traffic laws" under section 2-202. Therefore, insofar as Rodriguez's claim depends upon a failure to arrest him for DUI, the defendants' have absolute immunity under section 4-107.

¶ 23       Rodriguez acknowledges that, under section 4-107, the defendants cannot be liable based on a failure to make an arrest. However, he argues that section 4-107 is not implicated here since Kessler did not conduct any investigation, and, therefore, did not exercise discretion to arrest or not arrest Rodriguez. In other words, he asserts it never came to the point of an arrest because Kessler's did not investigate sufficiently to obtain facts to support an arrest.

¶ 24       We do not find this argument persuasive. The allegations necessarily implicate a situation where probable cause for a DUI arrest would have been present. That is, the allegations necessarily mean Kessler would have ascertained that Rodriguez was likely under the influence of alcohol and, therefore, would have probable cause to arrest him for DUI had Kessler conducted the investigations Rodriguez claims Kessler should have. A plaintiff cannot avoid an applicable provision of the Tort Immunity Act by "pleading around" it and "arguing that their case [is] really

about something else." See *Ries*, 242 Ill. 2d at 219; see also *Prough v. Madison County*, 2013 IL App (5th) 110146, ¶ 29 ("The plaintiff cannot avoid sections 4–102 and 4–107 of the Tort Immunity Act by arguing that his case is really about something else."). Rodriguez's argument amounts to such an attempt.

¶ 25     Alternatively, Rodriguez contends that even if section 4-107 immunizes the defendants for failure to make an arrest, he can maintain his action based on Kessler's failure to take actions, apart from arresting him, such as calling someone to pick him up, to prevent him from driving.

¶ 26     We disagree. As we have explained, an arrest situation necessarily follows from Rodriguez's allegations and this argument again attempts to plead around section 4-107. Nonetheless, had Kessler, through some alternative to an arrest, prevented Rodriguez from driving, he would no longer be "engage[d] in a course of conduct designed to carry out or put into effect any law" within the purview of section 2-202 but, rather, performing a "community caretaking function" to aid Rodriguez and for the benefit of public safety, which Illinois courts have found to be police protection or service covered by section 4-102's absolute immunity.

¶ 27     Rodriguez argues that section 4-102's immunity for failure to provide adequate police protection or service does not apply based on elements set forth in *DeSmet v. County of Rock Island*, 219 Ill. 2d 497 (2006). He submits that *DeSmet* found section 4-102 applies when (1) police did not respond to the scene, (2) if police responded to the scene, they would not have been enforcing or executing a law, and (3) the police did not assert control over the situation and did not alter the circumstances at the scene for better or worse. Based on these elements, Rodriguez argues section 4-102 should not apply because Kessler responded to the scene of the collision at Sauk Trail and Shabbona Drive where he was enforcing the traffic laws and asserted control over

the situation. Furthermore, Rodriguez contends Kessler altered the situation for the worse by allowing Rodriguez to continue driving while intoxicated.

¶ 28 Rodriguez's argument misreads *DeSmet*. The *DeSmet* court did not employ the language Rodriguez relies on to set forth elements for determining application of section 4-102. Rather, these were factors that the court noted to distinguish the facts presented in *DeSmet* from the court's earlier decision in *Doe v. Calumet City*, 161 Ill. 2d 374 (1994). Moreover, the purpose of distinguishing *DeSmet* from *Doe* was to determine whether the court should recognize or read in an exception for willful and wanton conduct when section 4-102 applied, as the court had done in *Doe*. See *DeSmet*, 219 Ill. 2d at 520-21 (distinguishing case from *Doe*); see also *Ries,* 242 Ill. 2d at 226 ("the discussion in *DeSmet* distinguishing *Doe* is relevant only to 'the extent that *Doe* still represents good law.' "). Even so, the supreme court later overruled *Doe*, holding a willful and wanton exception cannot be read into provisions of the Tort Immunity Act that do not contain such an exception. *Ries*, 242 Ill. 2d at 227. Thus, *DeSmet* does not support Rodriguez's argument against application of section 4-102.

¶ 29 Apart from *DeSmet*, Rodriguez relies on the Fifth District's opinion in *Keener v. City of Herrin*, 385 Ill. App. 3d 545 (2008), *vacated on other grounds*, 235 Ill. 2d 338 (2009) to argue that section 2-202 prevails over section 4-102. In *Keener*, police arrested the decedent for underage consumption of alcohol and allowed her to leave the police station at night by herself in an intoxicated state. *Id*. at 545-46. She was subsequently struck and killed by a car while walking on a street. *Id*. The appellate court found the circuit court improperly dismissed the counts of the complaint that alleged willful and wanton conduct. *Id*. at 559. However, to reach that decision, the court relied on *Doe v. Calumet City*'s recognition of a willful and wanton exception (*id*. at 556) and employed the same elements from *DeSmet* (*id*. at 559) that we have found inapposite.

Therefore, *Keener* does not support Rodriguez's argument against application of section 4-102 either.

¶ 30    *Keener* also relied on two cases that Rodriguez cites for support: *Fatigato v. Village of Olympia Fields*, 281 Ill. App. 3d 347 (1996) and *Ozik v. Gramins*, 345 Ill. App. 3d 502 (2003). In *Fatigato*, police officers responding to a domestic disturbance directed an intoxicated man to drive away and he subsequently crossed the median of an Interstate highway striking the plaintiffs' car. *Fatigato*, 281 Ill. App. 3d at 348. Similarly, in *Ozik,* police officers allowed an intoxicated driver to drive away after citing him for traffic violations and a passenger was killed in a subsequent accident. *Ozik*, 345 Ill. App. 3d at 504. These cases present scenarios closer to the facts of this case. But, as in *Keener*, the courts in both *Fatigato* and *Ozik* relied on *Doe v. Calumet City* to find that a willful and wanton exception applied and prevailed over sections 4-102 and 4-107. *Fatigato* 281 Ill. App. 3d at 356; *Ozik*, 345 Ill. App. 3d at 513. However, as with *Doe v. Calumet City*, our supreme court expressly overruled *Ozik*. *Ries*, 242 Ill. 2d at 227. Thus, neither *Fatigato* nor *Ozik* support that Rodriguez can avoid the absolute immunity of sections 4-102 and 4-107.

¶ 31    Issues of immunity aside, we further observe that this case is distinguishable because, unlike the plaintiffs in *Fatigato* and *Ozik*, Rodriguez's injury resulted from his own criminal conduct. Illinois courts have recognized the "long-standing principle that we should not assist parties whose own illegal acts have contributed in the cause of damages. Rather, we must leave [such plaintiffs] where they chose to place themselves." *Reed v. Witvoet*, 311 Ill. App. 3d 735, 740 (2000) (citing *Newton v. Illinois Oil Co.*, 316 Ill. 416, 424 (1925)); see also 1A C.J.S. *Actions* § 67 (2021) ("As matter of public policy, where the plaintiff has engaged in unlawful conduct, the courts will not entertain the suit if the plaintiff's conduct constitutes a serious violation of the law and the injuries for which the plaintiff seeks recovery are a direct result of a violation involving

hazardous activities which were not justified under the circumstances. *** the law will leave the parties to an illegal act or transaction where it found them."). "[T]hose who knowingly and intentionally engage in serious illegal acts should not be able to impose liability upon others for the consequences of their own behavior." *Rimert v. Mortell*, 680 N.E.2d 867, 872 (Ind. Ct. App. 1997). Public policy in Illinois favors that Rodriguez should be barred from recovery. For instance, only third parties have a cause of action when injured by an intoxicated person under the Dram Shop Act (235 ILCS 5/6-21 (West 2016)): a voluntarily intoxicated person cannot recover for injuries they cause to themselves. *Goodknight v. Piraino*, 197 Ill. App. 3d 319, 323 (1990). As Rodriguez stated in his deposition, he made the decision to take his chances when he drove away from Senholtz's house after consuming an entire bottle of whiskey, despite knowing he was intoxicated. Beyond that, after Kessler allowed him to drive away, Rodriguez made the "hardheaded" decision to continue driving notwithstanding his own realization, at that time, that it was unsafe. Thus, since he chose to place himself in a position to be injured, we must leave him there.

¶ 32                                    III. CONCLUSION

¶ 33        For the reasons stated, we find the defendants are immune based on sections 4-102 and 4-107 of the Tort Immunity Act and entitled to judgment as a matter of law. Accordingly, we affirm the judgment of the circuit court.

¶ 34        Affirmed.