# Illinois Official Reports

## Appellate Court

---

*Robinson v. Village of Sauk Village*, 2021 IL App (1st) 200223

---

| | |
|---|---|
| Appellate Court Caption | JAVIER ROBINSON, Plaintiff-Appellant, v. THE VILLAGE OF SAUK VILLAGE, THE VILLAGE OF CRETE, MARK BUGAJSKI, ANDREW VAUGHAN, ALLEN RINCHICH and JUAN GARCIA, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>No. 1-20-0223 |
| Filed | April 9, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-L-002000; the Hon. Melissa A. Durkin, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Kevin O'Connor and Cameron J. Tober, of O'Connor Law Firm, Ltd., of Chicago, for appellant.<br><br>Timothy C. Lapp, of Hiskes, Dillner, O'Donnell, Marovich & Lapp, Ltd., of South Holland, for appellees Village of Sauk Village, Mark Bugajski, and Andrew Vaughan.<br><br>Patrick H. O'Connor, of Hartigan & O'Connor P.C., of Chicago, for other appellees. |

John K. Kennedy and Daniel Watkins II, of Kennedy Watkins LLC, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Panel JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Rochford concurred in the judgment and opinion.

## OPINION

¶ 1    The plaintiff, Javier Robinson, filed the instant action against the defendants, the Village of Sauk Village, the Village of Crete, Officer Mark Bugajski, Officer Andrew Vaughan, Officer Allen Rinchich, and Officer Juan Garcia, seeking damages for injuries he sustained when he was struck by a vehicle driven by Mark Coffey, who was fleeing from the police.[1] The circuit court granted summary judgment in favor of all of the defendants, and the plaintiff has appealed. For the reasons that follow, we reverse the judgment of the circuit court and remand the matter for further proceedings.

¶ 2    The plaintiff filed a six-count complaint, charging the individual defendants with willful and wanton conduct that proximately resulted in the injuries he sustained when he was struck by Coffey's vehicle. The complaint also sought recovery from the two village defendants under the doctrine of *respondeat superior* by reason of the actions of their respective individual defendant-employees. The Village of Sauk Village, Bugajski, and Vaughan (collectively the Sauk Village defendants) answered the plaintiff's complaint, denying the material allegations of willful and wanton conduct. The Village of Crete, Rinchich, and Garcia (collectively the Village of Crete defendants) answered the plaintiff's complaint, denying the material allegations of willful and wanton conduct and raising seven affirmative defenses, including immunities under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2016)). Thereafter, the Sauk Village defendants filed a motion for summary judgment. Bugajski and Vaughan asserted immunity under section 2-202 of the Tort Immunity Act (*id.* § 2-202), arguing that their actions did not rise to the level of willful and wanton conduct, a lack of proximate cause, and immunity under section 4-106 of the Tort Immunity Act (*id.* § 4-106). The Village of Sauk Village asserted immunity under section 2-109 of the Tort Immunity Act (*id.* § 2-109). The Village of Crete defendants also moved for summary judgment, asserting immunity under sections 4-106 and 2-202 of the Tort Immunity Act. Garcia also asserted immunity under section 2-201 of the Tort Immunity Act (*id.* § 2-201). On January 9, 2020, the circuit court granted the defendants' motions for summary judgment, and this appeal followed.

¶ 3    Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018).

---

[1]The driver of the fleeing vehicle is referred to in the record both as Mark Coffey and Mark Coffee. Throughout this opinion he is referred to as Mark Coffey.

Our review of an order granting summary judgment is *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411 (1993). In conducting that review, we have examined all of the pleadings and evidentiary material on file at the time of the entry of the orders appealed from in their light most favorable to the plaintiff. *Kolakowski v. Voris*, 83 Ill. 2d 388, 398 (1980). From that evidentiary material taken with its inferences most favorable to the plaintiff (see *Lapidot v. Memorial Medical Center*, 144 Ill. App. 3d 141, 147 (1986)), we adduce the following facts relevant to the disposition of this appeal.

¶ 4        On August 10, 2017, Rinchich, Officer Patrick Hoernig, and Garcia were working the 6 p.m. to 6 a.m. shift as police officers for the Village of Crete. Rinchich and Hoernig were patrol officers; Garcia was a sergeant and the officer in charge. While patrolling, Rinchich heard a radio dispatch of a recently stolen black Buick LaCrosse (hereinafter referred to as the black Buick), and soon thereafter, he saw what he believed to be the stolen black Buick traveling in the opposite direction. Rinchich made a U-turn in his patrol car and began following the black Buick. After following behind the vehicle for approximately a quarter of a mile, Rinchich activated the flashing lights on his patrol car in an effort to cause the vehicle to stop. After Rinchich activated the flashing lights on his patrol car, the black Buick being driven by Coffey sped up. Rinchich gave chase and radioed Hoernig and Garcia, informing them that the black Buick would not stop. Garcia and Hoernig joined in the chase behind Rinchich. Coffey, driving the black Buick, led the officers through multiple jurisdictions at high rates of speed, at times upwards of 90 miles per hour, disregarding traffic signals and into oncoming traffic. The black Buick came to a stop in a churchyard in Dyer, Indiana. Upon entering the churchyard in pursuit, Rinchich positioned his patrol car perpendicular to the black Buick with the headlights of the patrol car shining on the driver's side. Rinchich exited his patrol car with his weapon drawn and yelled "hands" at Coffey. When Garcia and Hoernig arrived, they placed their patrol cars adjacent to and behind Rinchich's vehicle. Both officers exited their vehicles with their weapons drawn.

¶ 5        Bugajski and Vaughan, police officers in the Village of Sauk Village, were eating in the Sauk Village police station when they heard a radio dispatch that police officers from the Village of Crete were in pursuit of a stolen vehicle. Both officers got into their respective patrol cars and drove to the area where the radio dispatch indicated that the pursuit was heading. Before Bugajski and Vaughan could locate the pursuit, they were advised that it had passed out of Sauk Village. The two officers continued to monitor their radios as they patrolled in Sauk Village until they heard a subsequent radio broadcast that the pursuit was heading back into Sauk Village. The officers drove toward Steger Road and Torrence, where they could see flashing lights in the distance. The next radio broadcast stated that the fleeing black Buick was heading in the direction of a church parking lot on Steger Road in Dyer, Indiana. Bugajski proceeded to the church parking lot, where he observed the three patrol cars from the Village of Crete and the three officers from the Village of Crete, Rinchich, Garcia, and Hoernig, out of their patrol cars with their weapons drawn and pointed at Coffey, who was seated in the black Buick with its engine running.

¶ 6        Rinchich got no closer than 10 or 15 feet from the black Buick. Coffey remained in the vehicle with the engine running and never opened the door of the car. One minute and nineteen seconds after Rinchich arrived in the church parking lot, Coffey put the black Buick in gear and drove off. Rinchich, Garcia, and Hoernig followed in pursuit. Bugajski, along with

Vaughan, who had arrived in the church parking lot after the black Buick drove off, monitored the chase on the radio, blocked off intersections, and at times joined in the pursuit.

¶ 7    The black Buick driven by Coffey reentered Illinois with Rinchich, Garcia, and Hoernig in pursuit. The black Buick and the pursuing officers were traveling at high rates of speed, which at times were upwards of 100 miles per hour, disregarding traffic signals and into oncoming traffic. The chase traveled through a residential neighborhood, where Coffey exited the black Buick, got into another vehicle, and drove off. After Coffey switched cars, Vaughan began pursuing that vehicle with Hoernig and Garcia following. As the vehicle in which Coffey was traveling sped through the intersection of 221st Street and Sauk Trail, it struck the plaintiff, who was walking across the street in a crosswalk. Coffey continued to flee, returning to Indiana where he was shot and killed by a local police officer. The plaintiff was taken to a hospital in an ambulance.

¶ 8    On January 9, 2020, the circuit court granted the defendants' motions for summary judgment. In its oral ruling, the circuit court found that the defendants were immune from liability under section 4-106 of the Tort Immunity Act, which provides that neither a local public entity nor a public employee is liable for any injury inflicted by an escaped or escaping prisoner. See 745 ILCS 10/4-106 (West 2016). The circuit court reasoned that, at the point in time that the police officers pointed their guns at Coffey as he sat in the black Buick in the church parking lot, he was in custody, as no reasonable person in his position would have felt free to leave, and that, when he struck the plaintiff, he was an escaping prisoner. Following the hearing, the circuit court entered a written order, granting both the Sauk Village defendants' motion for summary judgment and the Village of Crete defendants' motion for summary judgment "for the reasons stated on the record."

¶ 9    In urging reversal of the summary judgments entered in favor of the defendants, the plaintiff argues that, at the time he was struck, Coffey was not an escaped or escaping prisoner and, as a consequence, the defendants are not immune from liability under section 4-106 of the Tort Immunity Act. He contends that Coffey "was not in custody in the church parking lot as there was no limitation on his freedom of movement before he fled from the lot."

¶ 10    Section 4-106(b) of the Tort Immunity Act provides, in relevant part: "Neither a local public entity nor a public employee is liable for: *** (b) Any injury inflicted by an escaped or escaping prisoner." *Id.* § 4-106(b). A prisoner is defined as "a person held in custody." *Id.* § 4-101. It follows then that an individual cannot escape unless he is first in custody. *People v. Campa*, 217 Ill. 2d 243, 259 (2005). The Tort Immunity Act does not define the term "custody."

¶ 11    The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature. *People v. Maggette*, 195 Ill. 2d 336, 348 (2001). In construing any statute, the inquiry begins with the language of the statute. *People v. Woodard*, 175 Ill. 2d 435, 443 (1997) (citing *People v. Hare*, 119 Ill. 2d 441, 447 (1988)). When, as in this case, the legislature does not define a term used in a statute, we look to other sources for its plain and ordinary meaning. *People ex rel. Department of Professional Regulation v. Manos*, 202 Ill. 2d 563, 572 (2002).

¶ 12    Webster's Third New International Dictionary defines "custody" as "judicial or penal safekeeping: control of a thing or person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it: imprisonment or durance of persons or charge of things." Webster's Third New International Dictionary 559 (1993). Black's Law Dictionary defines "custody" in general as "[t]he care and control of a thing or person for inspection,

- 4 -

preservation, or security." Black's Law Dictionary 412 (8th ed. 2004). Custody can be either physical or constructive. See *Campa*, 217 Ill. 2d at 253-54. Black's Law Dictionary defines "physical custody" as "[c]ustody of a person (such as an arrestee) whose freedom is directly controlled and limited." Black's Law Dictionary 1183 (8th ed. 2004). "Constructive custody" is defined as "[c]ustody of a person (such as a parolee or probationer) whose freedom is controlled by legal authority but who is not under direct physical control." Black's Law Dictionary 412 (8th ed. 2004).

¶ 13    In *Ries v. City of Chicago*, 242 Ill. 2d 205 (2011), the supreme court was called upon to determine whether an individual was an escaping prisoner within the meaning of section 4-106(b) of the Tort Immunity Act. Although the supreme court found no necessity to determine how broad the term "custody" may be, it found that the subject individual was in custody, as his freedom of movement had been directly controlled and limited, and that a reasonable person in his position would not feel free to leave. *Id.* at 217.

¶ 14    In *Ries*, an individual who was suspected of having fled from the scene of a traffic accident was placed in the back seat of a squad car by a Chicago police officer. It was at this point that the supreme court found that the individual was in custody. *Id.* After being left unattended in the rear seat of the squad car, the individual climbed into the front seat and drove away. While being pursued by the police, he collided with the vehicle in which the plaintiffs were riding. *Id.* at 208. On those facts, the supreme court concluded that the individual was an escaped or escaping prisoner and, as a consequence, the City of Chicago was immune from liability for the plaintiffs' injuries under section 4-106(b) of the Tort Immunity Act. *Id.* at 217.

¶ 15    Also of significance is this court's decision in *Townsend v. Anderson*, 2019 IL App (1st) 180771. In *Townsend*, two Chicago police officers stopped a vehicle that was occupied by four men, two in the front seat and two in the rear. *Id.* ¶ 3. The two officers approached the vehicle, one from the driver's side and one from the passenger side. *Id.* ¶ 31. The driver was ordered out of the vehicle and placed in handcuffs. The front seat passenger was also ordered out of the vehicle. As one of the officers was attempting to handcuff the front seat passenger, one of the rear seat passengers jumped into the front seat and was trying to put the vehicle in gear when the other officer grabbed at him. The man was able to elude the officer's attempts to restrain him, put the vehicle in gear, and drive off. One of the officers relayed what had occurred over the radio, giving a description of the fleeing vehicle and its direction of travel. *Id.* ¶ 6. The two officers did not pursue the fleeing vehicle; they remained at the scene where they had handcuffed the driver and front seat passenger. The two men in the fleeing vehicle were taken into custody about 5 minutes later after the fleeing vehicle had struck a vehicle in which the plaintiff was a passenger. *Id.* ¶¶ 1, 7. The plaintiff filed suit against the City of Chicago, the police officers involved in the initial traffic stop, and the police officers who subsequently apprehended the driver of the fleeing vehicle. *Id.* ¶ 1. The defendants filed a motion for summary judgment, arguing that they were immune from liability. The circuit court granted the motion, finding that the defendants were immune from liability pursuant to the provisions of section 4-106(b) of the Tort Immunity Act. *Id.* On appeal, this court affirmed, holding that the plaintiff's injuries were caused by an escaping prisoner within the meaning of section 4-106(b) of the Tort Immunity Act. *Id.* ¶ 34. In so holding, this court reasoned that the passengers in the vehicle stopped by the police officers "would not have reasonably felt free to leave the scene of that stop" (*id.* ¶ 32) and that the positioning of the officers on both sides

of the stopped vehicle "effectively curtailed *** [the passengers'] freedom of movement" (*id.* ¶ 31).

¶ 16    In both *Ries* and *Townsend*, the individual who was found to have been an escaping prisoner was determined to have been in custody before fleeing, as he would not have reasonably felt free to leave and his freedom of movement had been directly controlled and limited: in *Ries* when the individual was placed in the rear seat of a squad car and in *Townsend* when the two police officers took up positions on both sides of the vehicle in which the individual was riding. In this case, the plaintiff argues that, although a reasonable person in Coffey's position would not have reasonably felt free to leave when he was confronted in the church parking lot by multiple police officers with guns drawn, he was not in custody, as the police never controlled or limited his freedom of movement. The defendants argue that Coffey's freedom of movement was curtailed, controlled, or limited when the police officers in the church parking lot displayed their guns and shouted commands. According to the defendants, "[t]he curtailing of freedom of movement sufficient to establish 'custody' for purposes of section 4-106(b) [of the Tort Immunity Act] is accomplished by physical restraint or a show of authority."

¶ 17    Contrary to the defendants' assertion, we do not believe that a mere show of authority is sufficient to establish physical custody. If the defendants were correct, then every individual who runs from a pursuing police officer would be deemed in custody and, as a consequence, an escaping prisoner. We find no support for such a proposition.

¶ 18    The facts of record, when viewed in the light most favorable to the plaintiff, establish that, although a reasonable person in Coffey's position at the time that he was confronted in the church parking lot by multiple police officers with guns drawn would not have reasonably felt free to leave, his freedom of movement had not been controlled or limited. He was seated in the black Buick with the engine running, the police officers had not taken up positions that prevented him from exiting the vehicle on both the driver's side and the passenger's side, and the officers' patrol cars had not been parked in such a position so as to restrict the black Buick's movement either forward or in reverse. Stated otherwise, the evidence in the record does not establish, as a matter of law, that Coffey was in the physical custody of the officers when he fled the church parking lot; his freedom of movement had not been directly controlled or limited.

¶ 19    In further support of their argument that Coffey was an escaping prisoner at the time that he struck the plaintiff, the defendants rely on an allegation in the plaintiff's complaint, which states that "the stolen vehicle was being driven by Mark Coffey, now deceased, who, on information and belief, was wearing an ankle monitor" and an exhibit attached to the Crete defendants' motion for summary judgment reflecting that Coffey was on mandatory supervised release and that states "DO NOT ATTEMPT TO SEARCH, DETAIN OR ARREST SOLELY ON THIS RECORD." Relying on the supreme court's holding in *Campa*, 217 Ill. 2d 243, the defendants conclude that "Coffey was an escapee, he was escaping custody when he was out stealing cars while subject to electronic monitoring."

¶ 20    In *Campa*, the supreme court found that a defendant who was transferred to the Cook County Sheriff's Day Reporting Center while he was awaiting trial (*id.* at 245-46) was in custody within the meaning of the speedy-trial statute (725 ILCS 5/103-5 (West 2000)), as significant restraints were placed on his liberty (*Campa*, 217 Ill. 2d at 255). Terms and conditions for the defendant's participation in the day reporting center program included the

requirement that he report to the day reporting center as scheduled. *Id.* at 246. The supreme court noted that, although the conditions of the day reporting center program are not as onerous as the conditions of confinement in a correctional institution, the day reporting center program, nevertheless, is a form of restraint that falls within the broad meaning of the term "custody." *Id.* at 254.

¶ 21 It appears that the defendants are arguing that, by virtue of the fact that Coffey was on supervised release and wearing an ankle monitor when he struck the plaintiff, he was an escaped or escaping prisoner within at the meaning of section 4-106 of the Tort Immunity Act. The flaw in the argument is the absence of any evidence in the record supporting the proposition that Coffey had escaped, or was escaping, from the constructive custody of correctional authorities when he fled from the police in a stolen vehicle and struck the plaintiff.

¶ 22 Summary judgment is to be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). Based on the foregoing analysis, we find that the defendants failed to meet their burden of establishing as a matter of law that, when he struck the plaintiff, Coffey was an escaped, or escaping, prisoner. We conclude, therefore, that the circuit court erred in granting summary judgment in favor of the defendants based upon the immunity afforded under section 4-106 of the Tort Immunity Act.

¶ 23 This court may, however, affirm the judgment of the circuit court on any basis that appears in the record, regardless of whether the circuit court relied upon that basis or whether the circuit court's reasoning was correct. *Retirement Plan for Chicago Transit Authority Employees v. Chicago Transit Authority*, 2020 IL App (1st) 182510, ¶ 34. As appellees, the defendants may "urge any point in support of the judgment on appeal, even though not directly ruled on by the trial court, so long as the factual basis for such point was before the trial court." *Shaw v. Lorenz*, 42 Ill. 2d 246, 248 (1969). The defendants have argued their entitlement to summary judgment on a number of other grounds, which we will address in turn.

¶ 24 The defendants argue that they are immune from liability for the injuries suffered by the plaintiff under section 2-202 of the Tort Immunity Act (745 ILCS 10/2-202 (West 2016)), which provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." Although the Crete defendants assert that Rinchich and Garcia were not in the execution or enforcement of any law at the time that Coffey struck the plaintiff, they, like the Sauk Village defendants, argue that their actions in the pursuit of the vehicles driven by Coffey did not rise to the level of willful and wanton conduct.

¶ 25 The Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id.* § 1-210. Whether conduct is willful and wanton is ultimately a question of fact for the jury. *Doe v. Calumet City*, 161 Ill. 2d 374, 390 (1994).

¶ 26 There are undisputed facts in this case that could support a finding of willful and wanton conduct on the part of the individual defendants. Those include the nature of the area of the pursuit, which included suburban, residential, and commercial areas; the fact that the pursuit took place in both Illinois and Indiana; the duration of the pursuit; the fact that the vehicles driven by Coffey traveled at speeds upwards of 100 miles per hour, disregarded traffic signals,

and drove into oncoming traffic; and the fact that Coffey was suspected only of driving stolen vehicles, nonviolent, property-based felonies.

¶ 27    We find that under the specific facts of this case there exists a jury question as to whether the individual defendants engaged in willful and wanton conduct in pursuing the vehicles driven by Coffey, precluding summary judgment based on the immunity afforded public employees under section 2-202 of the Tort Immunity Act. See *Suwanski v. Village of Lombard*, 342 Ill. App. 3d 248, 256-58 (2003).

¶ 28    Next, the defendants argue that the actions of the individual defendants in pursuing the vehicles driven by Coffey were not a proximate cause of the plaintiff's injuries. They argue that Coffey's actions of stealing cars, fleeing from the police, and disregarding traffic and criminal laws "alone" cased the plaintiff's injuries.

¶ 29    The issue of proximate cause is ordinarily determined by the trier of fact. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992). However, where the facts are undisputed and reasonable people would not differ as to the inferences to be drawn from the facts, proximate cause may be determined as a matter of law. *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 476 (2001) (Harrison, J., specially concurring). In *Lee v. Chicago Transit Authority*, the supreme court held that the term "proximate cause" describes two distinct requirements: cause in fact and legal cause. *Lee*, 152 Ill. 2d at 455. Cause in fact exists where there is a reasonable certainty that a defendant's acts caused the injury or damage. *Id.* "A defendant's conduct is a cause in fact of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury." *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258 (1999) (citing *Lee*, 152 Ill. 2d at 455). "A defendant's conduct is a material element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred." *Id.* Legal cause is a question of foreseeability. *Lee*, 152 Ill. 2d at 456. The relevant inquiry is whether the injury is of a type that a reasonable person would see as a likely result of his conduct. *Id.*

¶ 30    Where reasonable minds could differ as to whether a defendant's conduct was a substantial factor in bringing about a plaintiff's injury, there is a question for the jury to decide. *Id.* at 455. There may be more than one proximate cause of a plaintiff's injuries. *Suwanski*, 342 Ill. App. 3d at 255.

¶ 31    As to factual causation, there can be little doubt that reasonable minds could differ as to whether the individual defendants pursuing the vehicles driven by Coffey in the manner that they did was a material element and a substantial factor in bringing about the collision with the plaintiff. As noted by the court in *Suwanski*:

> "A police pursuit is unique in the sense that it can occur only if two vehicles are involved, the car that is fleeing and the car that is chasing. It is essentially symbiotic; both vehicles are necessary to have a chase. Thus, from the standpoint of causation in fact, it is difficult, if not impossible, under the facts of this case, to separate the two in terms of causation. Of course, a jury may very well conclude that both drivers were the proximate cause of the harm." *Id.* at 255-56.

¶ 32    As for legal causation, we believe that a jury could reasonably find that, by chasing the vehicles driven by Coffey at high rates of speed through residential and commercial suburban streets, knowing that he was disregarding traffic signals and driving into oncoming traffic, the individual defendants should have reasonably anticipated that Coffey's conduct and his hitting and injuring a third party were the natural and probable result of their own conduct in pursuing

Coffey under these particular conditions. See *id.* at 256; see also *Freeman v. City of Chicago*, 2017 IL App (1st) 153644, ¶¶ 46-48.

¶ 33 For the reasons stated, we conclude that there exist genuine issues of fact precluding summary judgment in favor of the defendants on the question of whether the actions of the individual defendants were a proximate cause of the plaintiff's injuries.

¶ 34 Section 2-109 of the Tort Immunity Act provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2016). Having found that the individual defendants were not entitled to summary judgment due to the existence of genuine issues of material fact, it follows that their employers, the Village of Crete and the Village of Sauk Village, were not entitled to summary judgment.

¶ 35 We reverse the summary judgment entered in favor of the defendants and remand this matter to the circuit court for further proceedings.

¶ 36 Reversed and remanded.